UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE M. ARNOLD,
    an individual,

    Plaintiff,

vs.

POINSETTIA HOMEOWNERS
ASSOCIATION, INC.,
    a Florida not-for-profit
    corporation,

    Defendant.

Case No.: 23-
Hon.

---

THE RUBINSTEIN LAW FIRM
Jan Jeffery Rubinstein (P57937)
Kevin M. Burton (P86626)
Attorneys for Plaintiff
30665 Northwestern Hwy., Ste. 165
Farmington Hills, MI 48334
(248) 220-1415
jjr@therubinsteinfirm.com
kb@therubinsteinfirm.com

---

There is no other pending or resolved civil action arising out of
the same transaction or occurrence as alleged in the Complaint.

## VERIFIED COMPLAINT

NOW COMES Plaintiff, CHRISTINE M. ARNOLD, by and through her attorneys, THE RUBINSTEIN LAW FIRM, and for her Verified Complaint, states the following:

## JURISDICTION AND VENUE

1. This is a diversity action for claims of Violation of the Equal Protection Clause, Conspiracy to Interfere with Civil Rights, Sex Discrimination, Violation of the Fair Housing Act, Negligence, Intrusion Upon Seclusion, and Abuse of Process.

1

2. Plaintiff, CHRISTINE M. ARNOLD, is an adult resident of the State of Michigan, residing at 6483 Fieldview Dr., Rockford, Michigan 49341.

3. Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, INC., is a non-profit corporation authorized to conduct business in the State of Florida, with its principal place of business located at 4701 Ballard Road, Fort Myers, Florida, 33905.

4. This matter involves a civil action that satisfies the elements of 28 U.S.C. Sec. 1332(1) because there is complete diversity of citizenship between the parties.

5. Pursuant to 28 U.S.C. Sec 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it is incorporates and the State or foreign state where it has its principal place of business[.]"

6. Plaintiff is a resident of Rockford, Michigan. Defendant is a corporate entity incorporated under the laws of the State of Florida, with its principal place of business located in Florida.

7. Further, the amount in controversy in this matter exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, and Plaintiff seeks equitable relief which is within the exclusive jurisdiction of this Court.

8. Venue is proper in this judicial district under 28 U.S.C. Sec. 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

9. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

10. Defendant is the owner and operator of Poinsettia Mobile Home Park, a residential cooperative for adults aged fifty-five (55) and older, located in Lee County, Florida.

11. Plaintiff and her husband purchased Unit 268 in Poinsettia Mobile Home Park in 2019.

12. Almost immediately after Plaintiff moved into the unit, she began to experience issues with Defendant and her neighbors. Plaintiff quickly became the target of frivolous claims and harassment.

13. The President of Defendant Homeowners Association harassed Plaintiff and discriminated against Plaintiff as a woman whenever she made complaints to the Homeowners Association Board.

14. Plaintiff received several complaints of her dog's barking. Plaintiff's neighbors had dogs that barked as well, but only Plaintiff received complaints about her dog.

15. Plaintiff's phone number was published in the community directory. On several occasions, she was sent nude and inappropriate photos and messages by other neighbors.

16. When Plaintiff complained to Defendant about the unwanted photos and messages, she received no help and was harassed.

17. Defendant failed to provide adequate security within the community. Plaintiff caught her neighbors peering through the windows in her unit on several occasions. Defendant failed to take actions to increase security measures and to stop Plaintiff's neighbors from peering into her home.

18. On at least one occasion, two of Plaintiff's neighbors were peering into the windows and banging on them.

19. Plaintiff's neighbors repeatedly threatened to harm and attempted to physically harm Plaintiff. On one occasion, Plaintiff returned home and was attacked by a neighbor while exiting her vehicle.

20. On another occasion, Plaintiff was walking her dog in the community when a neighbor attempted to hit Plaintiff with his vehicle.

21. Plaintiff had to call police on several occasions due to Defendant and her neighbors' conduct and threats of harm toward Plaintiff. Defendant failed to take any action to correct issues and keep Plaintiff safe.

22. The President of Defendant Homeowners Association Board routinely discriminated against women when Plaintiff and other women in the community brought concerns to the Homeowners Association Board.

23. Plaintiff led an effort to remove the Board's president, which was ultimately unsuccessful and lead to further harassment by the president.

24. During March of 2022, Defendant initiated an eviction action against Plaintiff and her husband (**Exhibit A – Defendant's Eviction Complaint**).

25. Defendant wrongfully alleged that Plaintiff engaged in a series of "objectionable conduct" as the basis of its eviction complaint.

26. As a result of Defendant's inaccurate and wrongful pleadings against Plaintiff in the prior eviction action, Plaintiff was wrongfully removed from her home at Poinsettia Mobile Home Park.

## COUNT I – VIOLATION OF THE EQUAL PROTECTION CLAUSE (42 U.S.C. § 1983)

27. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

28. Plaintiff, at all times relevant, has been treated in a different manner from numerous other similarly situated individuals.

29. That further, at all relevant times, Defendant, Poinsettia Homeowners Association, subjected Plaintiff to intentional and arbitrary discrimination, by and through their disproportionate enforcement of community ordinances by its duly constituted agents.

30. As such, Defendant engaged in a "class-of-one" selective enforcement scheme, with the intent to inhibit Plaintiff's conduct and peaceful enjoyment of her home.

31. Defendant had no rational reason or basis to distinguish between Plaintiff and other similarly situated individuals.

32. Plaintiff was selectively treated, and the selective treatment that makes up the basis of this complaint was motivated by an intention to discriminate, such as to punish, and/or by malicious or bad faith intent to injure the Plaintiff.

33. As such, Defendant is liable for violations of the Equal Protection Clause.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

A) Legal Relief

    1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

    2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

    3) An award of interest, court costs, expert witness fees, and attorney fees.

B) Equitable Relief

    1) Whatever equitable relief appears appropriate at the time of final judgment.

## COUNT II– CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)

34. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

35. 42 USC 1985 provides in part:

> If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; … the party so injured or deprived may have

5

an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

36. In or around December 2019, Defendant entered into a conspiracy with one another and with other parties whose names are unknown to Plaintiff for the purpose of impeding, hindering, obstructing, or defeating the due course of justice.

37. Defendants entered into a conspiracy with one another with the intent to deny Plaintiff equal protection of the laws including but not limited to the intent to deny Plaintiff procedural, and substantive due process.

38. Defendant entered into a conspiracy with one another with the intent to injure Plaintiff for lawfully enforcing or attempting to enforce their right to equal protection of the law.

39. In furtherance of the objectives of the conspiracy referred to in the preceding paragraph, the Defendant either did or caused to be done the following overt acts:

   a. Initiated community ordinance violation proceedings with a clear intent to disrupt the peaceful enjoyment of Plaintiff's home;

   b. Disproportionately apply community and bylaw rules and regulations only to Plaintiff, and not to similarly situated individuals;

   c. Initiated eviction and quiet title actions against Plaintiff to improperly remove her from her home; and

   d. Other conspiring acts and violations of law, to be determined through the course of discovery.

40. Each of the acts listed above committed by Defendant were done in furtherance of the conspiracy referenced and described above.

41. As a result of the conspiracy committed by Defendant, Plaintiff was deprived of her civil rights, including the right to integrity of neutral Board decisions, the right to procedural

due process, the right to substantive due process, and the right to equal protection under the law.

42. Pursuant to provisions of 42 USC 1985(3), Plaintiff demands judgment against the Defendant on account of the allegations in this complaint, jointly and severally, in an amount in excess of $75,000, plus the costs of this action and any other relief that seems just and proper to this court.

43. As a direct or proximate result of these actions and inactions by Defendant, Plaintiff has sustained injuries, including but not limited damage to reputation, disruption of personal life, and other damages known and unknown.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

A) Legal Relief

1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

3) An award of interest, court costs, expert witness fees, and attorney fees.

B) Equitable Relief

1) Whatever equitable relief appears appropriate at the time of final judgment.

## COUNT III – SEX DISCRIMINATION

44. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

45. Plaintiff's sex was a significant factor in how Plaintiff was treated during the time she resided at Poinsettia Mobile Home Park.

46. Had Christine Arnold been a male, she would have been treated differently during the time she resided at Poinsettia Mobile Home Park.

47. Had Christine Arnold been a male, her concerns regarding unequal treatment by Defendant, treatment by neighbors, and inadequate security measures would not have been dismissed.

48. Defendant, through its authorized agents, representatives, and employees, including the Board President, were predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

49. Defendant, through its authorized agents, representatives, and employees, including the Board President, treated Plaintiff differently from similarly situated residents and community members of a different sex in the application of its bylaws and ordinances, based upon unlawful consideration of sex.

50. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

51. As a direct and proximate result of Defendant's unlawful actions in violation of Title VI of the Civil Rights Act, Plaintiff has sustained injuries and damages including, but not limited to, humiliation and embarrassment, mental and emotional distress, and loss of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

A) Legal Relief

1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

3) An award of interest, court costs, expert witness fees, and attorney fees.

B) Equitable Relief

1) Whatever equitable relief appears appropriate at the time of final judgment.

## COUNT IV – VIOLATION OF THE FEDERAL FAIR HOUSING ACT

52. Plaintiff hereby incorporates and realleges all above paragraphs as if set forth in full herein.

53. The Plaintiff's' Unit in Poinsettia Mobile Home Park constituted a dwelling under 42 U.S.C. 3602(b) as it is building and/or structure, or portion thereof, which is occupied, designed, and/or intended for occupancy, as a residence by one or more families.

54. Plaintiff's sex was a significant factor in how she was treated by Defendant.

55. Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, treated male residents of the community differently than Plaintiff in their management and administration of the Poinsettia Mobile Home Park community.

56. Had Plaintiff been a male, she would have been treated differently by Defendant.

57. . Defendant's failure and refusal to treat Plaintiff with equality in accordance with their civil rights have interfered with Plaintiff's' rights and enjoyment of her dwelling.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

A) Legal Relief

   1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

   2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

   3) An award of interest, court costs, expert witness fees, and attorney fees.

B) Equitable Relief

   1) Whatever equitable relief appears appropriate at the time of final judgment.

## COUNT IV – NEGLIGENCE

58. Plaintiff, CHRISTINE ARNOLD, incorporates and realleges all above paragraphs as if set forth in full herein.

59. That at all relevant times, Defendant owed a duty to Plaintiff, and to all residents of the community in general, to act with the amount of care that a reasonably prudent residential association would use under similar circumstances in connection with the security and supervision of the Poinsettia Mobile Home Park.

60. Defendant breached these duties by failing to adequately effectuate any security measures and/or supervision of the park grounds through the exercise of reasonable care, and otherwise failing to act in accordance with applicable state and/or federal law.

61. That as the proximate result of the aforementioned breaches of duties, Christine Arnold, has suffered damages to which she is entitled to relief.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

    A) Legal Relief

        1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

        2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

        3) An award of interest, court costs, expert witness fees, and attorney fees.

    B) Equitable Relief

        1) Whatever equitable relief appears appropriate at the time of final judgment.

## COUNT V – INTRUSION ON SECLUSION

62. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

63. The accusations that were lodged against Plaintiff by way of Defendant were utilized via being on property directly next to Plaintiffs, and by way of investigation tactics that violated Plaintiff's constitutional rights.

64. Plaintiff had a right to keep her personal life within the subject property private.

65. Defendant sought to investigate into Plaintiff's personal life when Defendant investigated into what was ongoing on Plaintiffs' property and initiated several ordinance violations against her.

66. Additionally, Defendant condoned the actions of Plaintiff's neighbors when they peered into her home on multiple occasions.

67. Defendant's actions in intruding on Plaintiff's right to privacy were highly offensive, both to Plaintiff and to a reasonable person.

68. Defendant's invasion of Plaintiff's privacy resulted in Plaintiff suffering extreme emotional distress, humiliation, monetary loss, and loss of business expectancies and personal relationships.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

A) Legal Relief

1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

3) An award of interest, court costs, expert witness fees, and attorney fees.

B) Equitable Relief

1) Whatever equitable relief appears appropriate at the time of final judgment.

## COUNT VI – ABUSE OF PROCESS

69. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

70. In filing the prior eviction and quiet title action, Defendant has abused the civil process by using it for an ulterior motive and improper purposes. This use of the civil process is not legitimate, regular, or legal.

71. Defendant's conduct in initiating the prior cause of action without proper cause was willful and intentional.

72. Defendant's use and misuse of the civil process is improper since Defendant's knew, or should have known, that the allegations regarding Plaintiff's actions and conduct in the community were false.

73. As a direct and proximate result of Defendant's misuse of the civil process, Plaintiff has suffered significant damages, including, but not limited to, harm to her professional reputation, economic damages, mental anguish, and unnecessary costs and legal expenses.

WHEREFORE, Plaintiff, CHRISTINE ARNOLD, requests judgment against Defendant, POINSETTIA HOMEOWNERS ASSOCIATION, as follows:

A) Legal Relief

1) Compensatory damages in excess of $75,000.00 to which Plaintiffs are found to be entitled;

2) Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

3) An award of interest, court costs, expert witness fees, and attorney fees.

B) Equitable Relief

1) Whatever equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

By:_____
Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiff

**I declare that the statements above are true to the best of my information, knowledge, and belief.**

_____
CHRISTINE M. ARNOLD

Sworn to and subscribed
before me this _____ day
of September 2023.

_____
Notary Public

13

Doc ID: 13afff5fe3941404fda9cd9c1169c5b5bb3fd715

# EXHIBIT A

ing # 164782546 E-Filed 01/16/2023 11:03:23 AM

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY, FLORIDA

Poinsettia Homeowners Association, Inc., a
Florida not-for-profit corporation,

      Plaintiff,

vs.

Christine M. Arnold, Robert A. Aardema,

      Defendants.

_____/

23-CA-000304

CASE NO. 2023-CA-_____

### SUMMONS

**THE STATE OF FLORIDA**
**TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:**

**YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint, Notice of Lis Pendens, and Notice of Appearance and Designation of E-mail Service Address in this lawsuit on:

      **Robert A. Aardema**
      268 Poinsettia Drive
      Fort Myers, FL 33905

Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney:

      **Jonathan P. Whitney, Esq.**
      LUTZ, BOBO & TELFAIR, P.A.
      One Sarasota Tower
      2 North Tamiami Trail, Suite 500
      Sarasota, Florida 34236

within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED: 01/19/2023

*Served 2/6/23*
*Time 11:55AM*
*By: EC #90031*

      Kevin C. Karnes
      CLERK OF THE CIRCUIT COURT

      By: _____
      Deputy Clerk

Page 1 of 2

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Lee County Court at (239) 533-5000 within two (2) working days of your receipt of this notice for further assistance.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefornica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las par-tes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y bunal.  Existen ostros requistos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su repuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su requesta a la per-sona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assigna-tion de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne depo-sez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

1/19/2023 1:06 PM FILED LEE COUNTY CLERK OF COURTS

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

CIVIL ACTION

CASE NO: 23-CA-000304

Poinsettia Homeowners Association Inc
    Plaintiff
vs
Arnold, Christine M et al
    Defendant

_____/

## STANDING ORDER IN CIRCUIT CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of this Circuit, the parties are ordered to adhere to the following information and procedures applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases (other than residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are required to participate in the case management system. The Court will issue a Case Management Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed Case Management Plan that has been approved by the Court. However, if it becomes necessary to amend the court-issued Case Management Plan, the parties may submit an Agreed Case Management Plan, subject to approval by the Court, or if the parties cannot agree on an Amended Plan, the parties may request a case management conference. The form of the Agreed Case Management Plan may be accessed at the Court's website at: https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory. Agreed Case Management Plans are to be submitted to Lee County Civil Case Management by email in Word format to LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the Clerk of Court.

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an

Rev. 9/28/21

out-of-court alternative to settling disagreements.  The Court requires the parties to participate in ADR prior to trial.  Mediation is mandatory unless the parties agree to another form of ADR.  Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties. The Court, at its discretion, may order the case be referred to Non-Binding Arbitration.  Non-Binding Arbitration is the process in which the court refers a case to a registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to Fla.R.Civ.P. 1820(h).

   4.  **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a case if there is no record of activity within a ten (10) month period of time.

   5.  **RULES OF PROFESSIONALISM.**  The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel practicing within the Circuit and self-represented litigants.  The Court requires that all familiarize themselves and comply with Administrative Order 2.20.  Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

   **DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.


                                    /s/Alane C. Laboda
                                    Administrative Circuit Judge


   **\*\*\*\*Original on file in the office of the Circuit Court Administrative Judge, Lee County**

Filing # 164782546 E-Filed 01/16/2023 11:03:23 AM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

Poinsettia Homeowners Association, Inc., a
Florida not-for-profit corporation,

     Plaintiff,

vs.

                                       CASE NO.  2023-CA- 000304

Christine M. Arnold, Robert A. Aardema,

     Defendants.

_____/

## COMPLAINT

Plaintiff, Poinsettia Homeowners Association, Inc., a Florida not-for-profit corporation ("Poinsettia"), sues Defendants, Christine M. Arnold and Robert A. Aardema, and in support thereof, states as follows:

1.     Plaintiff Poinsettia is a Florida not-for-profit corporation, operating pursuant to the provisions of Florida Statutes Chapter 719.

2.     Plaintiff Poinsettia is the fee simple owner and operator of Poinsettia Mobile Home Park, a residential cooperative ("Cooperative"), located in Lee County, Florida, as evidenced by the Warranty Deed attached hereto as **Exhibit A**.

3.     The Cooperative is an age-restricted "55+" retirement community, whose residents are varying stages of aging, from newly and actively retired to the very elderly.

4.     Defendants, Christine M. Arnold and Robert A. Aardema, husband and wife, are the record owner(s) of the following described Cooperative parcel under the terms and conditions set forth in the Master Form Proprietary Lease, a copy of which is attached hereto as **Exhibit B**:

                  Unit 268, Poinsettia Mobile Home Park, a

cooperative, according to Exhibit "C-2" (Plot Plan) of the Master Form Proprietary Lease recorded in Official Records Book 2642, Page 4105 through 4128, of the Public Records of Lee County, Florida.

Defendants' record ownership is evidenced by the Assignment of Proprietary Lease attached hereto as **Exhibit C** (hereinafter referred to as the "Lease") and a corresponding certificate showing membership in Poinsettia (the "Membership Certificate")(hereinafter the Membership Certificate and the Lease is collectively referred to as the "Property"). The following single-wide mobile home:

1982 Mobile Home VIN: 10L14946, Title No. 0021502101

lies appurtenant on the Property (hereinafter the "Mobile Home").

5.      The Lease, Article 27(vi) provides:

If at any time the Association shall determine, upon the affirmative vote of seventy-five percent (75%) of its then Board, at a meeting duly called for that purpose, that because of objectionable conduct on the part of the Unit Owner or of a person dwelling or visiting in the Unit, repeated after written notice from Association, the tenancy of the Unit Owner is undesirable; (it being understood, without limiting the generality of the foregoing, that to repeatedly violate or disregard the Rules and Regulations attached to the Bylaws or established in accordance with the provisions of this Agreement or the Bylaws or to permit or tolerate a person of dissolute, loose or immoral character to enter or remain in the unit, shall be deemed to be objectionable conduct).

6.      Since Mrs. Arnold purchased in the community, Mrs. Arnold has exhibited objectionable conduct including publishing false and defamatory statements against the Association's current and former employees; fabricating complaints against other residents; harassing her neighbors; submitting false or frivolous complaints to the Board; threatening neighbors; harassing the Association's employees; levying false accusations against the Association's president; and otherwise acting in an antisocial manner. More specifically,

examples of Mrs. Arnold's objectionable conduct includes:

- Accusing an Association employee of being a convicted murderer and disseminating this false information throughout the park despite being told that she was incorrect. The false complaint submitted to the Association reads

> Also would like to complain about convicted felons working in maintenance in the park with no background screening buyout temp agency. Pete was convicted of murder and is a felon anc Antoine is convicted of assault and has a felony Both individuals should not be working around the elderly who are frail and compromised. This is a safety issue. I would like the board to address this issue and to dismiss this individuals and conduct background checks on all temp workers for everyone's safety. [sic].

After Antoine's firing, Mrs. Arnold then hired him notwithstanding her allegation that he was "convicted of assault and has a felony." The false allegations against the Association's employees exposes the Association to potential liability due to Mrs. Arnold creating a hostile work environment.

- Submitting false complaints about her emotional support dog being attacked. An ensuing investigation revealed that there was no attack.

- Continually harassing her neighbors who are all afraid of her and afraid to turn in complaints for fear of retribution.

- Filing a nuisance complaint against her 75+year-old neighbor because ants and a woodpecker live in his tree.

- Whenever Mrs. Arnold is confronted with her objectionable conduct by the Board, she files a complaint twisting everything around from what is actually said. The Board is required to confront her in pairs in order to avoid her false accusations. Notwithstanding, she tries to trap Board members alone where she can more successfully attempt to manipulate the situation.

- Neighbors have submitted complaints about her dog barking. When a board member asked her for an update on attempts at remediation, she filed a complaint against the board member the next day in retribution.

- Threatening a neighbor that "she had better move if she knew what was good for her."

- Calling and texting employees at home when they are not at work with questions and complaints, again exposing the Association to liability due to Mrs. Arnold creating a hostile work environment, as well as having to pay employee overtime pay.

- Publishing false and defamatory statements against the Board president, alleging

that he was sexually inappropriate with one of her girlfriends.

• Harassing the Board president while he attempted to comfort his son on a video call while the boy's mother (who is also the president's ex-wife) was dying in a hospital in Kalamazoo Michigan. In fact, she was so insulting as to say that she saw his x-wife at a social event the night before here in the park.

• Refusing to take showers before using the swimming pool.

• Telling residents to "fuck off" and to mind their own "fucking" business when she has been confronted for failing to shower before using the pool.

• Shouting through the office window at the president and office manager in front of the Tuesday afternoon pool league levying false accusations and citing things that never happened.

7.     On March 10, 2022, the Association provided Defendants, Christine M. Arnold and Robert A. Aardema, notice that Mrs. Arnold's conduct was objectionable and exposed them to the termination of their Lease. True and correct copies of the Notice of Objectionable Conduct are attached hereto as **Exhibit D.**

8.     Since the March 10, 2022 Notice of Objectionable Conduct, Mrs. Arnold's conduct has worsened, including levying meritless complaints against the Board and her neighbors in an attempt to annoy and harass; repeatedly calling the police to investigate meritless complaints thereby causing disturbances in the community by the routine presence of Sheriff's deputies; repeated telephone calls to Board members harassing them with expletive laden rants; causing disturbances with neighbors; causing disturbances at Board meetings; and installing a fire pit in her yard in violation of the Association's rules and the Lee County Code of Ordinances, which exposes the Community to the risk of a catastrophic fire moving from one timely nestled house to the next. Cumulatively, Mrs. Arnold's objectionable conduct has breached the peace and quiet within the community to the continued detriment of its other residents.

9.     On November 3, 2022, the Board held a meeting duly called for the purpose of determining if Defendants' continued tenancy was undesirable, and on the affirmative vote of more than 75% of its members, voted to terminate the Defendants' lease.

10.    On December 19, 2022, Defendants were provided written Notice of the Termination of their Lease. A true and correct copy of the Notice of Termination of Lease is attached hereto as **Exhibit E**.

11.    Accordingly, on December 29, 2022, all right, title and interest that the Defendants had in the Property wholly ceased and expired.

## **COUNT I – QUIET TITLE AFTER TERMINATION OF OWNERSHIP RIGHTS**

12.    This is an action to quiet title to a cooperative parcel and confirm title in Plaintiff after its termination of the interest of the parcel owner.

13.    Plaintiff Poinsettia realleges paragraphs 1 through 11 as if fully stated herein.

14.    Defendant, Christine M. Arnold and Robert A. Aardema's Lease creates a cloud on Plaintiff's record title to the Property.

15.    All conditions precedent to the relief requested herein have been performed, satisfied or have otherwise been waived.

16.    Plaintiff Poinsettia has retained the undersigned attorneys to represent it in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff Poinsettia respectfully requests that this Court:

A.     Enter an order confirming the termination of the Lease as to Defendants, quieting title to the Property in Plaintiff, and finding that the estate and all right, title and interest of Defendants Christine M. Arnold, Robert A. Aardema, or successors of said Defendants, and all persons claiming by, through, under or against said Defendants since the filing of the Notice

of Lis Pendens is quieted.

        B.     Put Plaintiff Poinsettia in possession of the Property.

        C.     Award Plaintiff Poinsettia its costs and reasonable attorneys' fees incurred in this action.

        D.     Grant Plaintiff Poinsettia such other relief as this Court deems equitable and appropriate, including the surrender of the Membership Certificate to Plaintiff Poinsettia, or in the alternative, allowing Plaintiff Poinsettia to cancel the Membership Certificate and issue a new Membership Certificate to the purchaser thereof, and adjudging that any personal property, including the Mobile Home, not removed on or before the termination of the Lease shall, at the option of Plaintiff Poinsettia, be deemed abandoned and shall become property of the Plaintiff Poinsettia and may be disposed of by Plaintiff Poinsettia without liability or accountability to the Defendant, Christine M. Arnold and Robert A. Aardema, husband and wife.

## <u>COUNT II – EJECTMENT</u>

17.     This is an action in ejectment to recover possession of real property in Lee County, Florida.

18.     Plaintiff Poinsettia realleges paragraphs 1 through 11 as if fully stated herein.

19.     Plaintiff Poinsettia is entitled to immediate possession of the cooperative parcel.

20.     All conditions precedent to the relief requested herein have been performed, satisfied or have otherwise been waived.

21.     Plaintiff Poinsettia has retained the undersigned attorneys to represent it in this action and is obligated to pay them a reasonable fee for their services.

**WHEREFORE**, Plaintiff Poinsettia respectfully requests that this Court:

        A.     Enter judgment confirming that Plaintiff is the owner of the Cooperative and

ordering that Defendants be ejected therefrom.

      B.    Put Plaintiff Poinsettia in possession of the Property.

      C.    Award Plaintiff Poinsettia its costs and reasonable attorneys' fees incurred in this action.

      D.    Grant Plaintiff Poinsettia such other relief as this Court deems equitable and appropriate, including the surrender of the Membership Certificate to Plaintiff Poinsettia, or in the alternative, allowing Plaintiff Poinsettia to cancel the Membership Certificate and issue a new Membership Certificate to the purchaser thereof, and adjudging that any personal property, including the Mobile Homes, not removed on or before the termination of the Lease shall, at the option of Plaintiff Poinsettia, be deemed abandoned and shall become property of the Plaintiff Poinsettia and may be disposed of by Plaintiff Poinsettia without liability or accountability to the Defendants.

## COUNT III – INJUNCTION AGAINST HARASSMENT

22.    This is an action for an injunction against harassment.

23.    Plaintiff Poinsettia realleges paragraphs 1 through 8 as if fully set forth herein.

24.    Christine Arnold's repeated harassment of the Association by way of its Board causes substantial emotional distress and serves no legitimate purpose.

25.    Plaintiff Poinsettia is without a remedy at law to cause Christine Arnold from harassing the Association and community members.

WHEREFORE, Plaintiff Poinsettia respectfully requests that the Court:

      A.    Take jurisdiction of this cause and of the parties hereto.

      B.    Order the Defendant Christine M. Arnold cease and desist from engaging in her course of conduct directed to the Association and its Board of Directors, thereby causing

substantial emotional distress without a legitimate purpose.

Dated: January 16, 2023.

LUTZ, BOBO & TELFAIR, P.A.
One Sarasota Tower
Two North Tamiami Trail, Fifth Floor
Sarasota, Florida 34236
(941) 951-1800 Telephone
(941) 366-1603 Facsimile
jwhitney@lutzbobo.com

By: /s/ Jonathan P. Whitney
Jonathan P. Whitney
Florida Bar No. 0014874
Attorneys for Plaintiff Poinsettia

Exhibit A

This Instrument Prepared By
and return to:
James F. Gray, Esquire
Post Office Box 7100
Gainesville, Florida 32605

3851901

46,200.00

S.P. Sherwood

Grantee's E.I.N.: 59-2353965
Property Appraiser's
Parcel Identification No. 16-44-25-P2-00064.0000.

OR2642 PG4130

# WARRANTY DEED (Statutory Form-Section 689.02 F.S.)

THIS INDENTURE, made this 28th day of August, 1995 BETWEEN

POINSETTIA INVESTMENT, INC., a Florida Corporation, A/K/A POINSETTIA INVESTMENTS, INC., by Scriveners error in that certain Deed dated February 15, 1991, and recorded in Official Records Book 2203, Page 2472 of the Public Records of Lee County, Florida,

Grantor* and

POINSETTIA HOMEOWNERS ASSOCIATION, INC., a Florida Corporation, whose address is 4701 Ballard Road, Fort Myers, Florida 33905,

Grantee*

WITNESSETH: That said Grantor, for and in consideration of the sum of $10.00 Dollars and other good and valuable considerations to said Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said Grantee, and Grantee's heirs, personal representatives and assigns forever, Grantors interest in the following described land, situate, lying and being in Lee County, Florida, to-wit:

The East E 1/2 of the Northeast 1/4 of the Northwest 1/4, and the Northwest 1/4 of the Northeast 1/4, all being in Section 16, Township 44 South, Range 25 East, Lee County, Florida;

LESS those lands lying East of the following-described line: From the intersection of the Southerly right-of-way line of Luckett Road (66 feet wide) with the Westerly right-of-way of Ortiz Avenue (State Road No. S-80-B); thence from said point run West along the Southerly right-of-way line of Luckett Road for 400.0 feet to the point of beginning of the line herein referred to; thence run Southerly parallel to the Westerly right-of-way of said Ortiz Avenue for 762.0 feet; thence continue in a Southerly direction along the same course to the North right-of-way line of Ballad Road.

LESS the right-of-way of Luckett Road as described in Deed Book 249, page 459 of the Public Records of Lee County, Florida, and LESS the right-of-way of Kuna Avenue as shown in Plat Book 28, page 22 of the Public Records of Lee County, Florida, and LESS the right-of-way of Ballard Road as described in Official Records Book 141, page 224 of the Public Records of Lee County, Florida.

SUBJECT TO Perpetual Utility Easement Grant and Indemnity Agreement recorded in O.R. Book 1856, page 4260 of the Public Records of Lee County, Florida.

SUBJECT TO Lee County Ordinance No. 86-14 recorded November 30, 1990 in O.R. Book 2189, page 3281; and amended by Ordinance No. 86-38 in O.R. Book 2189, page 3334 of the Public Records of Lee County, Florida.

SUBJECT TO real property taxes and special assessments, if any, for the year 1995 and thereafter.

SUBJECT TO that certain Purchase Money, Wraparound, Balloon Mortgage in favor of POINSETTIA INVESTMENT, INC. in the principal amount of **$4,139,828.98** which mortgage wraps around that certain mortgage in favor of The Franklin Life Insurance Company dated December 23, 1992 and recorded December 28, 1992 in Official Records Book 2350, page 1572 of the Public Records of Lee County, Florida.

**THIS PROPERTY IS NOT THE HOMESTEAD OR CONTIGUOUS TO THE HOMESTEAD OF GRANTOR.**

And said Grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

*"Grantor" and "Grantee" are used for singular or plural, as the context requires.

**IN WITNESS WHEREOF** Grantor has hereunto set Grantor's hand and seal the day and year first above written.

Signed, sealed and delivered
in our presence:

POINSETTIA INVESTMENT, INC.
a Florida Corporation

X _____
Name: _____
(Please Print)

X _____(Seal)
ADAM MCGAVIN, JR.
Its: President

X _____
Name: _____
(Please Print)

STATE OF MARYLAND
COUNTY OF ANNE ARUNDEL

I certify that on this date before me, an officer duly authorized in the state and county named above to take acknowledgments, personally appeared ADAM MCGAVIN, JR. who is personally known by me or who produced _____ as identification, who executed the foregoing instrument as President of Poinsettia Investment, Inc., a corporation organized under the laws of Florida. He acknowledged before me that he executed the foregoing instrument as such officer in the name and on behalf of the corporation.

_____
NOTARY PUBLIC, State of MARYLAND

My commission expires 8-1-99

MARIE L. AMOS
NOTARY PUBLIC
Anne Arundel Co., MD.

Exhibit B

Prepared by &
RETURN TO:

Jonathan James Damonte, Esq.
P.O. Box 3226
Seminole, FL 34645

3851899

# POINSETTIA MOBILE HOME PARK, A COOPERATIVE

## CERTIFICATE OF FILING
### ARTICLES OF INCORPORATION NOT-FOR-PROFIT,
### BYLAWS, AND MASTER PROPRIETARY LEASE

I, ___HAROLD J. THIBODEAU_____, as __Assistant_____ Secretary of

POINSETTIA HOMEOWNERS ASSOCIATION, INC., a Florida corporation not-for-profit (the

"Association") do hereby certify that the attached is a true and correct copy of the Articles of

Incorporation (Not-For-Profit), Bylaws, and Master Proprietary Lease the Association as adopted

by its Board of Directors on August __30__, 1995, and that the same as attached have not been

amended.

Dated this __30__ day of August, 1995.


                                        Assistant  Secretary

STATE OF FLORIDA

COUNTY OF ___LEE_____

The foregoing instrument was acknowledged before me this 30__ day of August, 1995, by
__HAROLD J. THIBODEAU_____ as __Assistant_____ Secretary of Poinsettia
Homeowners Association, Inc., who: ☐ is personally known to me or ☒ has produced __his___
__Florida Driver's License #T130-350-29-335-0_____ as identification.

PATRICIA CONNER
MY COMMISSION # CC459491 EXPIRES
May 18, 1999
BONDED THRU TROY FAIN INSURANCE, INC

Notary Public



# State of Florida

## Department of State

I certify from the records of this office that POINSETTIA HOMEOWNERS ASSOCIATION, INC., is a corporation not for profit organized under the laws of the State of Florida, filed on May 4, 1983.

The document number of this corporation is 768273.

I further certify that said corporation has paid all fees and penalties due this office through December 31, 1995, that its most recent annual report was filed on March 16, 1995, and its status is active.

I further certify that said corporation has not filed Articles of Dissolution.

Given under my hand and the
Great Seal of the State of Florida,
at Tallahassee, the Capital, this the
Twelfth  day of  June, 1995

Sandra B. Mortham
Secretary of State

CR2EO22 (1-95)



## State of Florida

### Department of State

I certify the attached is a true and correct copy of the Articles of Incorporation of POINSETTIA HOMEOWNERS ASSOCIATION, INC., a corporation organized under the laws of the State of Florida, filed on May 4, 1983, as shown by the records of this office.

The document number of this corporation is 768273.

Given under my hand and the
Great Seal of the State of Florida,
at Tallahassee, the Capital, this the
Twelfth  day of  June, 1995

Sandra B. Mortham
Secretary of State

CR2EO22 (1-95)

768273

# ARTICLES OF INCORPORATION
## OF
## POINSETTIA HOMEOWNERS ASSOCIATION, INC.

FILED

Mar 4  11 04 AM '83

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

OR 642 PG1479

KNOW ALL MEN BY THESE PRESENTS, That we, the undersigned, each natural person competent to contract, do hereby associate ourselves together for the purpose of forming and creating a corporation not for profit under and by virtue of the laws of the State of Florida, and to that end we agree to subscribe to the following Articles of Incorporation.

### ARTICLE I
#### (NAME)

The name of the corporation shall be:  POINSETTIA HOMEOWNERS ASSOCIATION, INC.

### ARTICLE II

The purpose for which this Corporation is organized is to acquire by purchase, lease, or otherwise, lands and interests in lands; to own, hold, improve, develop, and manage any lands so acquired for the purpose of conducting thereon a general mobile home park business and for the purpose of renting, leasing, and letting such lands, whether improved or unimproved, for the conduct of any lawful business, trade, or occupation, customarily associated with mobile home parks; to own, hold, rent, lease, manage, encumber, improve, exchange, buy and sell real property, collect rents, and to do the general real estate business; and in general to have and exercise all powers, rights, and privileges necessary incident to carrying out properly the objects above mentioned.  And, further, to promote fellowship, good will and entertainment, as well as the advancement and development of civic improvements within the corporate limits; to accept for study and examination civic problems of the residents of Poinsettia Mobile Home Park and to promote and encourage cooperative relationship in all social and civic matters which are pertinent to this corporation.

The foregoing paragraph shall be construed as enumerating the purposes, objects and powers of this corporation, and no recitation, expression or declaration of specific powers or purposes herein

-1-

enumerated shall be deemed to be exclusive, but it is hereby expressly
declared that all other lawful powers not inconsistent herewith are
hereby included.

### ARTICLE III
### (MEMBERSHIP QUALIFICATIONS)

The membership of the Corporation shall constitute all persons
hereinafter named as subscribers, officers or directors, and such other
persons as may from time to time hereafter become members in the manner
provided by the By-Laws.

### ARTICLE IV

This corporation shall have a perpetual existence unless
sooner dissolved according to law.

### ARTICLE V

The names and residences of the subscribers to these Articles
of Incorporation are as follows:

| | |
|---|---|
| Mary R. Gehman | 4701 Ballard Road Lot 230<br>Fort Myers, Florida  33905 |
| Delmer Hellinger | 4701 Ballard Road Lot 193<br>Fort Myers, Florida  33905 |
| Edwin V. Hagen | 4701 Ballard Road Lot 226<br>Fort Myers, Florida  33905 |

### ARTICLE VI
### (OFFICERS)

The affairs of this Corporation are to be managed by a
President, a Vice-President, a Secretary and a Treasurer. Such
officers will be elected by the Board of Directors annually.  The names
of the persons who are to serve as officers until the first annual
election of officers under the Articles of Incorporation are as
follows:

| | |
|---|---|
| Mary R. Gehman | President |
| Delmer Hellinger | Vice-President |
| Marelyn Jackson | Secretary |
| Marelyn Jackson | Treasurer |

-2-

## ARTICLE VII

### (DIRECTORS)

There shall be ten (10) members of the initial Board of Directors of the corporation.  The names names and address of the persons who are to serve as Directors until the first election thereof are as follows:

| | |
|---|---|
| Merl Adams | 4701 Ballard Road Lot 306 |
| Waldo Gray | 4701 Ballard Road Lot 111 |
| Maurice Steinberg | 4701 Ballard Road Lot 118 |
| Edwin V. Hagen | 4701 Ballard Road Lot 226 |
| Sarah Huber | 4701 Ballard Road Lot 317 |
| Reta Grubenhoff | 4701 Ballard Road Lot 16 |
| Elmer Schabo | 4701 Ballard Road Lot 98 |
| Mary R. Gehman | 4701 Ballard Road Lot 230 |
| Delmer Hellinger | 4701 Ballard Road Lot 193 |
| Marelyn Jackson | 4701 Ballard Road Lot 248 |

All of the above in Fort Myers, Florida  33905

## ARTICLE VIII

### (BY-LAWS)

The by-laws of the corporation are to be made, altered or rescinded by the Members of the Board of Directors.

## ARTICLE IX

### (AMENDMENTS TO ARTICLES)

These Articles of Incorporation may be amended by the act of the Members of the Corporation.  Such amendments may be proposed and adopted in the manner provided by the By-Laws of the Corporation.

_Mary R. Gehman_
MARY R. GEHMAN

_Delmer F. Hellinger_
DELMER HELLINGER

_Edwin V. Hagen_
EDWIN V. HAGEN

-3-

STATE OF FLORIDA

COUNTY OF LEE

     I HEREBY CERTIFY, That on this day before me, a Notary Public
in and for the State of Florida-at-large, duly commissioned and
qualified, duly commissioned and qualified, personally appeared MARY R.
GEHMAN, DELMER HELLINGER and EDWIN V. HAGEN each to me well known, and
known by me to be the persons described in and who executed the
foregoing Articles of Incorporation, and they did severally acknowledge
to and before me that they subscribed these Articles as aforesaid.

     WITNESS my hand and seal at the City of Fort Myers, in the
County of Lee and State of Florida on this 27 day of April,
1983.

Notary Public

My Commission Expires:

My Commission Expires Sept. 28, 1985

-4-

CERTIFICATE DESIGNATING PLACE OF BUSINESS OR DOMICILE FOR
THE SERVICE OF PROCESS WITHIN THIS STATE, NAMING AGENT UPON
WHOM PROCESS MAY BE SERVED.

FILED

May 4  11 04 AM '83

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

OR 642 PG4083

        In   pursuance   of   Chapter   48.091,   Florida   Statutes,   the
following is submitted, in compliance with said Act:

        First—That POINSETTIA HOMEOWNERS ASSOCIATION, INC.          ,

desiring to organize under the laws of the State of Florida, with its

principal office, as indicated in the Articles of Incorporation at:

City of ___Fort Myers___          County of_____Lee_____ ,

State of _____Florida_____ ,

has named   Mary R. Gehman          ,

Located at   4701 Ballard Road  Lot 230          ,
            (Street address and number of building, Post
            Office box address not acceptable)

City of Fort Myers  33905    County of ___Lee___ ,

State of Florida, as its agent to accept service of process within this

state.

ACKNOWLEDGMENT:                    (Must be signed by designated agent)

        Having been named to accept service of process for the above

stated corporation, at place designated in this certificate, I hereby

accept to act in this capacity, and agree to comply with the provision

of said Act relative to keeping open said office.



                                  By: _Mary R. Gehman_
                                      Registered Agent

OR 542 PG4084

# POINSETTIA HOMEOWNERS ASSOCIATION, INC.

# BYLAWS

## POINSETTIA MOBILE HOME PARK

Ft. Myers, Florida

POINSETTIA HOMEOWNERS ASSOCIATION, INC.

BYLAWS

Table of Contents

ARTICLE I - OFFICE

ARTICLE II - MEMBERSHIP OF UNIT OWNERS
    Section 1. Membership
    Section 2. Housing for Older Persons
    Section 3. Unissued Memberships
    Section 4. Non-member tenants
    Section 5. Sales of Memberships
    Section 6. Resales
    Section 7. Annual Meeting
    Section 8. Place
    Section 9. Notice of Unit Owner Meetings
    Section 10. Closing of Membership Books and Fixing Record Date
    Section 11. Voting Record
    Section 12. Order of Business
    Section 13. Unit Owners Quorum and Voting
    Section 14. Voting of Units
    Section 15. Proxies
    Section 16. Notice of Adjourned Meetings
    Section 17. Special Meetings
    Section 18. Action by Unit Owners Without a Meeting
    Section 19. Complaints

ARTICLE III - DIRECTORS
    Section 1. Function
    Section 2. Qualifications
    Section 3. Compensation
    Section 4. Duties of Directors
    Section 5. Duty of Good Faith
    Section 6. Presumption of Assent
    Section 7. Number
    Section 8. Term
    Section 9. Election
    Section 10. Notice of Election of Directors
    Section 11. Candidacy
    Section 12. Vacancies
    Section 13. Recall and Removal of Directors
    Section 14. Quorum and Voting
    Section 15. Executive and Other Committees

OR 642 PG 085

Section 16. Meetings
Section 17. Notice
Section 18. Bids; Expenditure Limitation

ARTICLE IV - OFFICERS
Section 1. Officers
Section 2. Duties of Officers
Section 3. Removal
Section 4. Fiduciary Relationship
Section 5. Bonding

ARTICLE V - MEMBERSHIP CERTIFICATES
Section 1. Issuance
Section 2. Form
Section 3. Lost, Stolen or Destroyed Certificates
Section 4. Transfer of Membership Certificates
Section 5. Holder of Record
Section 6. Transfer fees

ARTICLE VI - BOOKS AND RECORDS
Section 1. Maintenance & Inspection
Section 2. Fiduciary Bond

ARTICLE VII - FISCAL YEAR

ARTICLE VIII - CORPORATE SEAL

ARTICLE IX - RULES AND REGULATIONS

ARTICLE X - AMENDMENT

ARTICLE XI - BUDGET
Section 1. Preparation & Notice
Section 2. Classification; Reserves
Section 3. Adoption
Section 4. Unit Owner Approval
Section 5. Financial Report

ARTICLE XII - COSTS AND ASSESSMENTS
Section 1. Costs
Section 2. Assessments
Section 3. Late Fees
Section 4. Enforcement
Section 5. Subordination to lien of mortgages

OR 642 PG4086

ARTICLE XIII - ARBITRATION

ARTICLE XIV - USE OF PRONOUNS

ARTICLE XV - CAPTIONS AND SECTIONS NUMBERS

OR 642 PG4087

BY-LAWS

OF

POINSETTIA HOMEOWNERS ASSOCIATION, INC.

These are the Bylaws of POINSETTIA HOMEOWNERS ASSOCIATION, INC., a corporation not-for-profit organized under the laws of the State of Florida for the purpose of governing the corporation.

## ARTICLE I - OFFICE

The principal office of the corporation in the State of Florida shall be located in the County of Lee at **4701 Ballard Road, Ft. Myers, Florida 33905.**

## ARTICLE II - MEMBERSHIP OF UNIT OWNERS

Section 1. Membership. Membership in **POINSETTIA HOMEOWNERS ASSOCIATION, INC.,** (the "Association") is restricted to owners of mobile homes located in **POINSETTIA MOBILE HOME PARK** (the "Park") who have purchased Cooperative Units ("Units") as described in the Master Occupancy Agreement (Master Form Proprietary Lease, hereinafter referred to as the "Agreement") issued by the Association in **POINSETTIA MOBILE HOME PARK, A COOPERATIVE** (the "Cooperative"). There shall be one (1) membership for each Unit in the Cooperative. It is hereby declared to the policy of the Association, and the ultimate goal of the Cooperative, that each mobile owner own the Unit assigned to the Cooperative Parcel (lot) upon which such mobile home owner's mobile home is located.

Section 2. Housing for Older Persons. The Park is intended as a community for residents 55 years of age and older. The Association provides facilities and services specifically designed to meet the social and physical needs of persons 55 years of age and older. The Association recognizes the need to provide ample housing opportunities for older persons and makes every effort to provide for the housing needs of those 55 years of age and older. The Board of Directors, and any committee of the Board of Directors so empowered, reserves the exclusive right to refuse admittance to any prospective resident. The Association has a written policy by which adherence to the exemption criteria established under the Fair Housing Act of 1988 is regulated by the Board of Directors, and all actions of the Association regarding prospective residents are designed to assure that prospective residents are 55 and older. At least one occupant of every dwelling unit in the Park must be 55 years of age or older, and every other occupany of every dwelling unit must be 45 years of age or older. A  copy of the Cooperative's written Fair Housing Policy may be obtained from the Association upon request.

Section 3. Unissued Memberships. Any memberships remaining unsold after the initial sale of Cooperative Units upon conversion of the Park to resident ownership pursuant to the provisions of Chapter 723, Florida Statutes, shall be held in the treasury by the Association for issuance to future Unit owners.

OR 642 PG:088

Section 4. Non-member tenants. Mobile home owners who do not purchase memberships shall be tenants of the Park and pay such rental and fees as from time to time may be established by the Board of Directors of the Association according to the provisions of Chapter 723, Florida Statutes.

Section 5. Sales of Memberships. After conversion of the Park to resident ownership, any mobile home owner renting the lot upon which such mobile home owner's mobile home is located may purchase a Unit in the Park upon such price and terms as may be set by the Board of Directors. If a mobile home located in the Park is sold to a purchaser who desires to purchase a Unit in the Cooperative, and the membership associated with that Unit is held by the Association, the membership shall be made available for purchase by the purchaser upon such price and terms as the Board of Directors may from time to time determine.

Section 6. Resales. If a Unit Owner sells a mobile home located in the Park to which a Unit is affixed, the purchaser of the mobile home also must purchase the member's Unit as a condition precedent to owning such mobile home.

Section 7. Annual Meeting. The annual meeting of the Unit Owners shall be held in the month of January of each year on day and at a time to be determined by the Board of Directors. In any event, the annual meeting of Unit Owners for any year shall be held no later than thirteen months after the last preceding annual meeting of Unit Owners. Business transacted at the annual meeting shall include the election of Directors of the Association. However, failure to timely hold an annual meeting shall not affect the terms of Officers or Directors, or the validity of actions taken by them on behalf of the Association.

Section 8. Place. Meetings of Unit Owners shall be held in the Park at the main recreation hall, unless otherwise specified by the Board of Directors, in which case the meeting shall be held in a location in Pinellas County convenient to the Unit Owners.

Section 9. Notice of Unit Owner Meetings. Written notice stating the place, day and hour of the meeting, incorporating an identification of agenda items and, in the case of a special meeting, the purposes for which the meeting is called, shall be delivered not less than fourteen (14) nor more than sixty (60) days before the meeting, by certified mail or by personal hand delivery, by or at the direction of the President, the Secretary, or the Officer or persons calling the meeting to each Unit Owner of record entitled to vote at such meeting. Such notice shall be deemed to be delivered when deposited in the United States mail or personally hand delivered and addressed to the Unit Owner at his or her address as it appears on the membership books of the Association, with postage thereon prepaid, except that notices sent to Unit Owners known to be part-time residents of the Park shall be sent to their other official address. Part-time residents shall keep their other official residence address on file with the Secretary and when they are not at their Park address, their notices shall be sent to their other official address. A Unit Owner may waive in writing his or her right to receive mail delivery of notices of meetings. Written waivers shall be kept on file by the Secretary of the Association. Notice of all Unit Owner meetings must be posted in a conspicuous place on the park property at least fourteen continuous

(14) days before all such meetings. An Officer of the Association shall provide an affidavit affirming that the notices were mailed or hand delivered according to the provisions of this Article to each member at the address last furnished to the Association.

Section 10. <u>Closing of Membership Books and Fixing Record Date</u>. To determine the Unit Owners entitled to notice of or to vote at any meeting of Unit Owners or any adjournment thereof, or entitled to receive payment of any dividend, or in order to make a determination of Unit Owners for any other purpose, the Board of Directors shall provide that the membership books shall be closed for a stated period but not to exceed, in any case, sixty (60) days. If the membership books shall be closed to determine the Unit Owners entitled to notice of or to vote at a meeting of Unit Owners, such books shall be closed for at least fifteen (15) days immediately preceding such meeting. When a determination of Unit Owners entitled to vote at any meeting of Unit Owners has been made as provided in this section, such determination shall apply to any adjournment thereof, unless the Board of Directors fixes a new record date for the adjourned meeting.

Section 11. <u>Voting Record</u>. The Officers or agent having charge of the membership books for the Association shall make, at least ten (10) days before each meeting of the Unit Owners, a complete list of the Unit Owners entitled to vote at such meetings or any adjournment thereof, with the address and certificate number of each. The list shall be kept on file for ten (10) days prior to such meeting at the registered office of the Association and any Unit Owner shall be entitled to inspect the list at any time during usual business hours. The list also shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any Unit Owner at any time during the meeting. If the requirements of this section have not been substantially complied with, the meeting, on demand of any Unit Owner in person or by proxy, shall be adjourned until the requirements are complied with. If no such demand is made, failure to comply with the requirements of this section shall not affect the validity of any action taken at such meeting.

Section 12. <u>Order of Business</u>. The order of business at the annual meeting of Unit Owners and, insofar as possible, at all other meetings of Unit Owners, shall be as follows:

(a) Call to order
(b) Proof of notice of meeting
(c) Call for ballots not yet cast
(d) Election of directors
(e) Installation of new directors
(f) Reading and approval of any unapproved minutes of previous meetings
(g) Reports of officers, directors, and committees
(h) Disposition of unfinished business (old business)
(i) Consideration of new business
(j) Adjournment

Unit Owners shall have the right to participate in meetings of Unit Owners with reference to all designated agenda items. However, the Association may adopt reasonable rules governing the frequency, duration, and manner of Unit Owner participation. Any Unit Owner may tape record or videotape meetings of the Unit Owners subject to such rules as may be adopted by the Division.

Section 13. Unit Owners Quorum and Voting. A majority of the Units entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of Unit Owners. If a quorum is present, the affirmative vote of the majority of the Units represented at the meeting and entitled to vote shall be the act of the Unit Owners unless otherwise provided by law. After a quorum has been established at a Unit Owners' meeting, the subsequent withdrawal of Unit Owners, so as to reduce the number of Unit Owners entitled to vote at the meeting below the number required for a quorum, shall not affect the validity of any action taken at the meeting or any adjournment thereof.

Section 14. Voting of Units. Each Unit Owner entitled to vote in accordance with the terms and provisions of the Articles of Incorporation and these By-laws, shall be entitled to one (1) vote for each Unit owned by such Unit Owner.

Section 15. Proxies. Except as specifically otherwise provided herein, Unit Owners may not vote by general proxy but may vote by limited proxies substantially conforming to a limited proxy form adopted by the Florida Division of Land Sales, Condominiums and Mobile Homes (the "Division"). Limited and general proxies may be used to establish a quorum. Limited proxies shall be used for votes taken to waive or reduce reserves, for votes taken to amend the articles of incorporation or bylaws, and for any other matter for which the law requires or permits a vote of the Unit Owners. No proxy, limited for general may be used in the election of the Board of Directors. General proxies may be used for other matters for which limited proxies are not required, and also may be used in voting for nonsubstative changes to items for which a limited proxy is required and given. Every general proxy must be signed by the Unit Owner or his or her attorney-in-fact. Every proxy shall be effective only for the specific meeting for which it has been given and any lawfully adjourned meetings thereof, except that in no event will a proxy be valid for more than ninety (90) days from the date it was executed. Additionally, every proxy shall be revocable at the pleasure of the Unit Owner executing it. The authority of the holder of a general proxy to act shall not be revoked by the incompetence or death of the Unit Owner who executed the proxy unless, before the authority is exercised, written notice of an adjudication of such incompetence or of such death is received by the Association Officer responsible for maintaining the list of Unit Owners.

Section 16. Notice of Adjourned Meetings. When a meeting is adjourned to another place or time, it shall not be necessary to give any notice of the adjourned meeting if the place and time to which the meeting is adjourned are announced at the meeting at which the adjournment is taken, and at the adjourned meeting any business may be transacted that might have been transacted on the original date of the meeting. If, however, after the adjournment the Board of Directors fixes a new record date for the adjourned meeting, a notice of the adjourned meeting shall be given as provided in this section to each Unit Owner of record on the new record date entitled to vote at such meeting.

---

Section 17. <u>Special Meetings</u>. Special meetings of the Unit Owners shall be held when directed by the President, the Board of Directors, or when requested in writing by the holders of not less than ten (10) percent of all the Units entitled to vote. A meeting requested by Unit Owners shall be called for a date not less than fourteen (14) nor more than sixty (60) days after the request is made, unless the Unit Owners requesting the meeting designate a later date. The call for the meeting shall be issued by the Secretary, unless the President, Board of Directors, or Unit Owners requesting the meeting shall designate another person to do so.

Section 18. <u>Action by Unit Owners Without a Meeting</u>. Any action required by law, these by-laws or the Articles of Incorporation of this Association to be taken at any annual or special meeting of Unit Owners of the Association, or any action that may be taken at any annual or special meeting of such Unit Owners, may be taken without a meeting, without prior notice and without a vote, if consent in writing, setting forth the action so taken, shall be signed by the holders of Units having not less than the minimum number of votes that would be necessary to authorize or take such action.

Section 19. <u>Complaints</u>. When a Unit Owner files a written complaint by certified mail with the Board of Directors, the Board shall respond to the Unit Owner within thirty (30) days of receipt of the complaint. The Board shall give a substantive response to the complainant, notify the complainant that a legal opinion has been requested, or notify the complainant that advice has been requested from the Florida Division of Land Sales, Condominiums and Mobile Homes (the "Division"). If the Board requests advice from the Division, the board shall, within 10 days after the receipt of the advice, provide in writing a substantive response to the complainant. If a legal opinion is requested, the Board shall, within 60 days after receipt of the complaint, provide in writing a substantive response to the complainant. The failure to provide a substantive response to the complainant as provided herein precludes the board from recovering attorney's fees and costs in any subsequent litigation, administrative proceeding, or arbitration arising out of the complaint.

## ARTICLE III - DIRECTORS

Section 1. <u>Function</u>. All corporate powers shall be exercised by or under the authority of, and the business and affairs of this Association shall be managed under the direction of the Board of Directors.

Section 2. <u>Qualifications</u>. All members of the Board of Directors shall be Unit Owners. If a Unit is owned by more than one person, including a husband and wife, only one of the joint owners shall be entitled to hold office as a Director or Officer of this Association at any one time.

Section 3. <u>Compensation</u>. The Unit Owners, by majority vote, shall determine the rate of compensation, if any, for the Directors and Officers. However, the members of the Board of Directors shall be entitled to reimbursement for any reasonable expenses incurred in the performance of their duties.

OR 642 PG4093

**Section 4. Duties of Directors.** The Directors shall have a fiduciary relationship to the Association. A Director shall perform his duties as a Director, including his duties as a member of any committee of the Board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the Association, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a Director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

(a) one or more officers or employees of the Association whom the Director reasonably believes to be reliable and competent in the matters presented,

(b) counsel, public accountants or other persons as to matters that the Director reasonably believes to be within such person's professional or expert competence, or

(c) a committee of the Board upon which he does not serve, duly designated in accordance with a provision of the Articles of Incorporation or the By-Laws, as to matters within its designated authority, which committee the Director reasonably believes to merit confidence.

**Section 5. Duty of Good Faith.** A Director shall not be considered to be acting in good faith if he has knowledge about the matter in question that would cause such reliance described above to be unwarranted. A person who does his duty in compliance with this section shall have no liability by reason of being or having been a Director of the Association. The Association shall indemnify and hold harmless any Directors from liability for corporate action.

**Section 6. Presumption of Assent.** A Director of the Association who is present at a meeting of its Directors at which action on any Association matter is taken shall be presumed to have assented to the action taken unless he votes against such action or abstains from voting in respect thereto because of an asserted conflict of interest.

**Section 7. Number.** This Association shall be managed by a Board of Five (5) Directors. The number of Directors may be increased or decreased from time to time by amendment to these By-Laws, but no decrease shall have the effect of shortening the terms of any incumbent Director. There shall never be less than three (3) Directors.

**Section 8. Term.** Seven (7) Directors shall be elected at the first meeting of the Unit Owners on staggered terms to achieve the result of three (3) Directors serving three (3) year terms, two (2) Directors serving two (2) year terms and two (2) Director serving a one (1) year term. This staggering of Directors' terms is intended to provide continuity to the management of the Association. The Unit Owners also may elect additional Directors to fill the terms of any Directors resigning during their term or who otherwise leave office. At the discretion of the Board of Directors, the election of Directors may

---

be held in a different manner than stated above for the first year after the purchase of the park as long as the alternative method satisfies the requirements of the staggered terms stated above.

Section 9. Election. The Board of Directors shall be elected by written ballot or voting machine. Proxies shall not be used in the election of members of the Board of Directors, either in general elections or elections to fill vacancies caused by recall, resignation, or otherwise. Elections shall be decided by a plurality of those ballots cast. There shall be no quorum requirement for the election of Directors, however, at least twenty (20) percent of the eligible voters must cast a ballot in order to have a valid election of Directors. No Unit Owner shall permit any other person to vote his or her ballot, and any such ballots improperly cast shall be deemed invalid. Any Unit Owner needing assistance in casting the ballot may obtain assistance in casting the ballot. Any Unit Owner violating this provision may be fined by the Association in accordance with the provisions of §719.303, Florida Statutes. The regular election shall occur on the day of the annual meeting of Unit Owners. Notwithstanding these provisions, an election and balloting are not required unless more candidates file a notice of intent to run or are nominated than vacancies exist on the Board of Directors.

Section 10. Notice of Election of Directors. Not less than sixty (60) days before a scheduled election, the Association shall mail or deliver, whether by separate association mailing or included in another association mailing or delivery including regularly published newsletters, to each affected Unit Owner entitled to vote, a first notice of the date of the election. Not less than fourteen (14) days before the election, the Association shall mail a second notice of election to all Unit Owners entitled to vote therein, together with a ballot which shall list all candidates, an agenda, and any candidate information sheets.

Section 11. Candidacy. Any Unit Owner or other eligible person desiring to be a candidate desiring to be a candidate for the Board of Directors shall give written notice to the Association not less than forty (40) days before a scheduled election. Upon the request of a candidate, the Association shall include an information sheet, no larger than 8½ inches by 11 inches, which must be furnished by the candidate not less than thirty-five (35) days prior to the election, to be included with the mailing of the ballot, with the costs of mailing and copying to be borne by the Association. The Association disclaims and shall have no liability for the contents of the information sheets provided by the candidates.

Section 12. Vacancies. Any vacancy occurring in the Board, including any vacancy created by reason of an increase in the number of Directors, shall be filled by the remaining Directors, who shall appoint such replacement Director or Directors as are necessary to fill any vacancies. A Director so elected will serve until the next annual meeting when a replacement Director shall be elected in the manner provided by these By-laws who shall serve the remainder of the unexpired term.

Section 13. Recall and Removal of Directors. Subject to the provisions of §719.301, any Director or the entire Board of Directors may be removed, with or without cause, by a vote or agreement in writing of a majority of all Unit Owners then entitled to vote at an election of Directors. A special meeting of the Unit Owners to recall a member or members of the Board may be called by

ten percent (10%) of the Unit Owners giving notice of the meeting as required for a meeting of the Unit Owners and stating the purpose of the meeting. Anything in these Bylaws to the contrary notwithstanding, such recall shall be made in accordance with the provisions of §719.106 (1)(f), F.S., as the same may be amended from time to time.

(a) If the recall is approved by a majority of all voting interests by a vote at a meeting, the recall shall be effective as provided herein. The Board of Directors shall duly notice and hold a Board meeting within five (5) full business days of the adjournment of the Unit Owner meeting to recall one or more Board members. At the meeting, the Board shall either certify the recall, in which case such member or members shall be recalled immediately and shall turn over to the Board within five (5) full business days any and all records of the association in their possession, or shall proceed as set forth in §719.106(1)(f)3.

(b) If the proposed recall is by an agreement in writing by a majority of all voting interests, the agreement in writing shall be served on the association by certified mail, or by personal service in the manner authorized by Chapter 48, Florida Statutes. The Board of Directors shall duly notice and hold meeting of the Board within five (5) full business days after receipt of the agreement in writing. At the meeting, the Board shall either certify the written agreement to recall members of the Board, in which case such members shall turn over to the Board, within five (5) full business days, any and all records of the Association in their possession, or proceed as set forth in §719.106(1)(f)3.

(c) If the Board determines not to certify the written agreement to recall members of the Board, or if the recall by a vote at a meeting is disputed, the Board shall, within five (5) full business days after the Board meeting, file with the Florida Division of Land Sales, Condominiums and Mobile Homes (the "Division") a petition for mandatory non-binding arbitration pursuant to the procedures of §719.1255, F.S.. The Unit Owners who voted at the meeting or who executed the agreement in writing shall constitute one party under the petition for arbitration. If the arbitrator certifies the recall on any member of the Board, the recall shall be effective upon service of the final order of arbitration upon the Association. Any member so recalled shall deliver to the Board any and all records and property of the Association in his or her possession within five (5) full business days of the effective date of the recall.

Section 14. <u>Quorum and Voting</u>. A majority of the number of Directors fixed by these By-Laws shall constitute a quorum for the transaction of business. The act of the majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

Section 15. <u>Executive and Other Committees</u>. The Directors, by resolution adopted by a majority of the full Board, may designate from among its members, an executive committee and other committees, and each such committee shall serve at the pleasure of the Board with the authority contained in the Florida Statutes. The Board, by resolution, may designate one or more Directors as alternative members of any such committee, who may act in the place and stead of any absent member or members at any meeting of such committee.

Poinsettia Mobile Home Park
Bylaws

Section 16. <u>Meetings</u>. Meetings of the Directors shall be held at a time and place at the discretion of the Board. Meetings may be called by the President or by any two (2) Directors. Members of the Board may participate in a meeting of such Board by a conference telephone or similar communications equipment by which all persons participating in the meeting can hear each other at the same time. Participation by such means shall constitute presence in person at a meeting. All Board of Directors meetings and all committee meetings shall be open to all Unit Owners and notice shall be posted in a conspicuous place on the Park property at least forty-eight (48) continuous hours before each meeting. Any Unit Owner may tape record or videotape meetings of the Board of Directors. The right to attend such meetings includes the right to speak at such meetings with reference to all designated agenda items, and to audio-tape or video-tape such meetings in accordance with rules promulgated by the Division. The Association may adopt reasonable rules governing the frequency, duration, and manner of Unit Owner statements.

Section 17. <u>Notice</u>. Except in case of emergency, written notice of the time and place of meetings of Directors shall be given to each Director either by personal delivery or by mail, telegram or cablegram <u>and</u> by notice posted in a conspicuous place in the Park at least forty-eight (48) continuous hours before the meeting. The business to be transacted at or the purpose of any special meeting of the Directors shall be specified in the notice.

(a) Notice of any meeting at which assessments against Unit Owners are to be discussed for any reason shall specifically contain a statement that assessments will be considered and the nature of any such assessments.

(b) The Board of Directors shall mail a meeting notice and copies of the proposed annual budget of expenses to the Unit Owners at their last known address, not less than thirty (30) days before the meeting at which the budget will be considered. Otherwise a copy of the budget shall be posted in a conspicuous place in the Park and written notice of the time and place of the budget meeting shall be delivered to each Unit Owner 30 days before such meeting.

(c) Any item not included on the notice may be taken up on an emergency basis by at least a majority of the members of the Board. Such emergency action shall be noticed and ratified at the next regular meeting of the Board.

Section 18. <u>Bids; Expenditure Limitation</u>. All contracts for the purchase, lease, or renting of materials or equipment to be used by the Association in accomplishing its purposes, all contracts for services, except employee contracts, and all contracts not to be fully performed within one (1) year of making, shall be in writing. Any such contract which requires payment by the Association in an amount which in aggregate exceeds five percent (5%) of the Association's budget, including reserves, shall be submitted to competitive bids for such materials, equipment services. However, the Association shall not be required to accept the lowest bid. The Board of Directors shall obtain the consent of a majority of the Unit Owners to all expenditures in excess of $5,000 for any specific item.

---

a surrender of this Agreement, except as provided in Section 17, (d) the Unit Owner will not assign this Agreement or sublet the Unit, (e) any modification, cancellation, surrender, termination or assignment of this Agreement or any sublease of the Unit not made in accordance with the provisions of this Agreement shall be void and of no effect, (f) the Association will not consent to any further pledge or mortgage of this Agreement or security interest created in the membership certificate, (g) the Unit Owner will not make any further pledge or mortgage or create any further security interest in the membership certificate or this Agreement, and (h) any such further pledge or mortgage or security interest shall be void and of no effect.

(vii) A secured party claiming or exercising any of the rights and privileges granted it pursuant to the provisions of this Section shall be deemed to have agreed to indemnify Association for all loss, liability, or expense (including reasonable attorneys' fees) arising out of claims by Unit Owner, or his successors or assigns, against Association or the secured party, or their respective successors or assigns, for acts or omissions to act on the part of either Association or secured party, or their respective successors or assigns, pursuant to this Section. The Association will give the secured party written notice with reasonable promptness of any such claim against the Association and the secured party may contest such claim in the name and on behalf of the Association with counsel selected by the secured party at the secured party's sole expense. The Association shall execute such papers and do such things as are reasonably necessary to implement the provisions of this sub-part (vii).

(viii) Upon Unit Owner's final payment under the loan given by the secured party or upon prepayment of such loan, secured party will give Association notice of such final payment or prepayment.

## ARTICLE 21 - ASSOCIATION'S RIGHT TO REMEDY UNIT OWNER'S DEFAULTS

If the Unit Owner shall fail for thirty (30) days after notice to make repairs or perform maintenance to any part of the Unit, its fixtures or equipment, or shall fail to remedy a condition which has become objectionable to the Association, or if the Unit Owner or any person dwelling in the unit shall request the Association, its agents or servants to perform any act not required by this Agreement to be performed by the Association, the Association may invoke any and all remedies available to under §719.303(3), Florida Statutes, and any other applicable law not in conflict therewith.

## ARTICLE 22 - COOPERATION

The Unit Owner shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Association is incorporated.

## ARTICLE 23 - WAIVERS

The failure of the Association on any one occasion or several, to insist upon a strict performance of any of the provisions of this Agreement, or to exercise any right or option provided by this Agreement, or to serve any notice, or to institute any action or proceeding, shall not be construed as a waiver, or a relinquishment for the future, of any such provisions, options or rights, but such provisions, options or rights shall continue and remain in full force and effect. The receipt by the Association of Maintenance Fees, Common Expenses or Assessments with knowledge of the breach of any covenant of this Agreement, shall not be deemed a waiver of such breach, and no waiver by the Association of any Agreement provision shall be deemed to have been made unless in a writing expressly approved by the Board.

## ARTICLE 24 - NOTICES

Any notice by or demand from either party to the other shall be duly given only if in writing and sent by certified or registered mail, return receipt requested: if by the Unit Owner, addressed to the Association at the park with a copy sent by regular mail to the Association's managing agent or secretary if there is no managing agent; if to the Unit Owner, addressed to the Unit. Either party may by notice served as provided by this Agreement designate a different address for service of such notice or demand. Notices or demands shall be deemed given on the date when mailed, except notices of change of address shall be deemed served when received.

POINSETTIA HOMEOWNERS ASSOCIATION, INC.
Master Form Proprietary Lease

10

(f) sign with the President, or a Vice President, membership certificates, the issuance of which has been authorized the Board of Directors;

(g) perform all duties incidental to the office of Secretary and such other duties as may be assigned to the Secretary from time to time by Board of Directors.

All official correspondence of the Corporation shall be referred to the Secretary who shall maintain a file of such correspondence at the corporation office.

THE TREASURER shall:

(h) have custody of and be responsible for all of the funds and financial records of the Association;

(i) receive and give receipts for money due and paid to the corporation from any source whatsoever;

(j) deposit all such monies paid to the corporation in the name of the Corporation in such banks, trust companies, or other depositories as shall be selected in accordance with these bylaws;

(k) keep full and accurate accounts of receipts and disbursements and render accounts thereof at the annual meetings of members and whenever else required by the Board of Directors or the President;

(l) give bond for the faithful discharge of his duties;

(m) perform all of the duties incidental to the office of treasurer, and such other duties as may be assigned to the treasurer from time to time by Board of Directors.

Section 3. Removal. Any officer or agent elected or appointed by the Directors may be removed whenever in their judgment the best interest of the Association would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

Section 4. Fiduciary Relationship. The Officers of the Association have a fiduciary relationship to the Association and its Unit Owners.

Section 5. Bonding. The Association shall obtain and maintain adequate provision for the fidelity bonding of all persons who control or disburse funds of the Association in accordance with the provisions of §719.106(k). "Persons who control or disburse funds" means those individuals authorized to sign checks, and the president, secretary, and treasurer of the Association.

Agreement and membership certificate shall have been transferred to any assignee in accordance with Article 17 hereof; or (vi) this Agreement or the membership certificate to which it is appurtenant shall pass to anyone other than the named Unit Owner by reason of a default by the Unit Owner under a pledge or security agreement or a leasehold mortgage made by the Unit Owner;

(iii) if there is an assignment or subletting of this Agreement without full compliance with the requirements of Article 17 hereof; or if any person not authorized by Article 4 or shall be permitted to use or occupy the Unit, and the Unit Owner shall fail to cause such unauthorized person to vacate the Unit within ten days after written notice from the Association;

(iv) if the Unit Owner shall be in default for a period of one month in the payment of any Maintenance Fees, Common Expense or Assessment or of any installment and shall fail to cure such default within ten (10) days after written notice from the Association;

(v) if the Unit Owner shall be in default in the performance of any covenant or provision of this Agreement, other than the covenant to pay Maintenance Fees, Common Expenses or Assessments, and such default shall continue for thirty (30) days after written notice from the Association; provided, however, that if said default consists of the failure to perform any act the performance of which requires any substantial period of time, then if within the 30-day period such performance is commenced and diligently prosecuted to conclusion without delay and interruption, the Unit Owner shall be deemed to have cured the default;

(vi) if at any time the Association shall determine, upon the affirmative vote of seventy-five percent (75%) of its then Board, at a meeting duly called for that purpose, that because of objectionable conduct on the part of the Unit Owner, or of a person dwelling or visiting in the Unit, repeated after written notice from Association, the tenancy of the Unit Owner is undesirable; (it being understood, without limiting the generality of the foregoing, that repeatedly to violate or disregard the Rules and Regulations attached to the Bylaws or established in accordance with the provisions of this Agreement or the Bylaws or to permit or tolerate a person of dissolute, loose or immoral character to enter or remain in the Unit, shall be deemed to be objectionable conduct);

(vii) if the Unit Owner shall default in the payment or performance of any of the Unit Owner's obligations under any pledge or leasehold mortgage or other security agreement (the "security agreement") given a secured party (who has complied with the provisions of Section 20.2, and written notice of such default is given to the Association by the secured party or its counsel.

(viii) if at any time the Association shall determine, upon the affirmative vote of two-thirds (2/3rds) of its then Board at a meeting of such Board duly called for that purpose, and the affirmative vote of the record holders of at least ninety percent (90%) of its then issued membership certificates, at a meeting duly called for that purpose, to terminate all Agreements;

(ix) if the common facilities shall be destroyed or damaged and seventy-five percent (75%) of the Unit Owners shall decide not to repair or rebuild;

(x) if at any time the common facilities or a substantial portion thereof shall be taken by condemnation proceedings;

## ARTICLE 28 - WAIVER OF RIGHT OF REDEMPTION

The Unit Owner hereby expressly waives any and all right of redemption in case the Unit Owner shall be dispossessed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this Agreement are not restricted to their technical legal meanings.

POINSETTIA HOMEOWNERS ASSOCIATION, INC.
Master Form Proprietary Lease                                                                                    12

against damages to the common areas or cooperative property. Within 15 days after a tenant vacates the premises, the Association shall refund the full security deposit or give written notice to the tenant of any claim made against the security. Disputes under this paragraph shall be handled as disputes concerning security deposits under §83.49, Florida Statutes.

## ARTICLE VI - BOOKS AND RECORDS

Section 1. Maintenance & Inspection. The Association shall keep correct and complete books and records of account and shall keep minutes of the proceedings of Unit Owners, Directors and committees upon the terms and conditions provided by law, and shall maintain them available for inspection by Directors, Unit Owners, or their authorized representatives, at reasonable times and upon reasonable notice. The Association shall retain  minutes and records for a period of not less than seven (7) years.

Section 2. Fiduciary Bond. All persons who control or disburse funds of the Association shall be bonded in the principal sum of not less than $10,000.00 for each such person. The Association shall bear the cost of bonding, unless otherwise provided by contract between the Association and an independent management company.

## ARTICLE VII - FISCAL YEAR

The fiscal year of the Association shall begin on the first day of January in each year.

## ARTICLE VIII - CORPORATE SEAL

The Directors shall provide a corporate seal that shall be circular in form and shall have inscribed thereon the name of the Association, state of incorporation, year of incorporation and the words "corporate seal."

## ARTICLE IX - RULES AND REGULATIONS

Rules and Regulations, as established by the Board of Directors, and as they may be amended by them from time to time, are hereby declared to be a part of these By-Laws, and shall bind all Unit Owners and tenants. Rules and Regulations also may be adopted or amended by the vote of a majority of those entitled to vote at any meeting at which there is a quorum. Rules and regulations adopted or amended by a vote of the majority of Unit Owners entitled to vote at a meeting at which there is a quorum shall not thereafter be amended by the Board of Directors without the vote of the Unit Owners unless such amendments are made solely for the purpose of complying with the requirements of law.

to, bind and inure to the benefit of the Association and its successors and assigns, and the Unit Owner and the personal representatives, legatees, distributees, successors and assigns of the Unit Owner, except as otherwise stated in this Agreement.

### ARTICLE 34 - ASSOCIATION'S ADDITIONAL REMEDIES

In the event of a breach or threatened breach by Unit Owner of any provision of this Agreement, the Association shall have the right of injunction and the right to invoke any remedy at law or in equity, as if re-entry, summary proceedings and other remedies were not provided for in this Agreement. The election of one or more remedies shall not preclude the Association from any other remedy. All remedies of the Association are cumulative to each other and any other remedies given by law.

### ARTICLE 35 - LESSEE MORE THAN ONE PERSON

If more than one person is named as Unit Owner under this agreement, the Association may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Unit Owner in connection to this Agreement, including, without limiting the generality of the foregoing, the surrender or assignment of this Agreement, or any request for consent to assignment or subletting. Each person named as the Unit Owner shall be jointly and severally liable for all of the Unit Owner's obligations. Any notice by the Association to any person named as Unit Owner shall be sufficient, and shall have the same force and effect, as though given to all persons named as Unit Owner.

### ARTICLE 36 - EFFECT OR PARTIAL INVALIDITY

If any clause or provision contained in this Agreement shall be adjudged invalid, the same shall not effect the validity of any other clause or provision of this agreement, or constitute any cause of action in favor of either party as against the other.

### ARTICLE 37 - NOTICE TO ASSOCIATION OF DEFAULT

The Unit Owner may not institute an action or proceeding against the Association or defend, or make a counterclaim in any action by the Association related to the Unit Owner's failure to pay Maintenance Fees, Common Expenses or Assessments if such action, defense or counterclaim is based upon the Association's failure to comply with its obligations under this Agreement or any law, ordinance or governmental regulation unless such failure shall have continued for thirty (30) days after the Unit Owner has given written notice of the default to the Association.

### ARTICLE 38 - UNITY OF MEMBERSHIP CERTIFICATE AND AGREEMENT

The membership certificate of the Association held by the Unit Owner and allocated to the Unit has been acquired and is owned subject to the following conditions agreed upon with the Association and with each of the other Agreements for their mutual benefit:

(i) the membership certificate represented by each certificate is transferable only as an entirety and only in connection with a simultaneous transfer of this Agreement;

(ii) the membership certificate shall not be sold except to the Association or to an assignee of this Agreement after compliance with all of the provisions of Article 17 of this Agreement relating to assignments.

### ARTICLE 39 - UNIT BOUNDARIES

The boundaries of each Unit in the Park shall be as follows:

POINSETTIA HOMEOWNERS ASSOCIATION, INC.
Master Form Proprietary Lease

14

OR2 642 PG4 122

Section 3. <u>Adoption</u>. The budget shall be adopted at a meeting of the Directors of the Association. The Board of Directors may, in any event, propose a budget to the Unit Owners at a meeting thereof or by writing, and if the budget or proposed budget is approved by the Unit Owners at the meeting or by a majority of all Unit Owners in writing, the budget shall be adopted. If a meeting of the Unit Owners has been called and a quorum is not attained or a substitute budget is not adopted by the Unit Owners, the budget adopted by the Board of Directors shall go into effect as scheduled.

Section 4. <u>Unit Owner Approval</u>. If the budget adopted by the Board requires assessment against the Unit Owners in any fiscal or calendar year exceeding 115 percent (115%) of such assessments for the preceding year, a special meeting of the Unit Owners shall be held upon written application of 10% of the Unit Owners. Not less than 10 days' written notice shall be given to each Unit Owner, but the meeting shall be held within 30 days of delivery of such application to the Board. The Notice of the Special Meeting of the Unit Owners must state that the purpose of the meeting is to consider the proposed assessment and for a possible recall and removal of some or all of the members of the Board of Directors. At the special meeting, Unit Owners may consider and enact a revision of the budget or recall any or all members of the Board and elect their successors. In determining whether assessments exceed 115 percent of similar assessments for prior years, any authorized provisions for reasonable reserves for repair or replacement of Cooperative property, anticipated expenses by the Association that are not anticipated to be incurred on a regular or annual basis, or assessments for betterments to the Cooperative property shall be excluded from computation.

Section 5. <u>Financial Report</u>. Within 60 days following the end of the fiscal year or calendar year, or annually on such date as is otherwise provided in the Bylaws of the Association, the Board of Directors of the Association shall mail or furnish by personal delivery to each Unit Owner a complete financial report of actual receipts and expenditures for the previous 12 months or a complete set of financial statements for the preceding fiscal year prepared in accordance with generally accepted accounting procedures. The report shall show the amount of receipts by accounts and receipt classifications and shall show the amount of expenses by accounts and expense classifications including, but not limited to: costs of security, professional and management fees and expenses, taxes, costs for recreational facilities, expenses for refuse collection and utility services, expenses for lawn care, costs for building maintenance and repair, insurance costs, administrative and salary expenses, and reserves for capital expenditures, deferred maintenance, and any other category for which the Association maintains a reserve account or accounts.

## ARTICLE XII - COSTS AND ASSESSMENTS

Section 1. <u>Costs</u>. All costs of operating, debt retirement, interests, other expenses and a reserve fund shall be shared according to the Schedule of Maintenance Fees and Common Expenses established by the Board of Directors. The Schedule of Maintenance Fees and Common Expenses shall not be changed except by the written consent of those Unit Owners affected.

An amendment to this Agreement will be binding upon and inure to the benefit of all Unit Owners and will become effective when recorded in the public records of the county where the property is located.

### ARTICLE 44 - PROVISIONS OF ARTICLES OF INCORPORATION, BY-LAWS, AND RULES

This Agreement is subject to, and the Unit Owner agrees to abide by the provisions of, the Articles of Incorporation, the Bylaws and the Rules and Regulations of the Association. These Articles of Incorporation, Bylaws, Rules and Regulations and any amendments made to them in the future, are made a part of this Agreement by reference. The Unit Owner acknowledges that he has been provided with a copy of the Articles of Incorporation, the current Bylaws and the current Rules and Regulations of the Association and that he or she has read them and understands their contents.

### ARTICLE 45 - CHANGES TO BE IN WRITING

The provisions of this Agreement cannot be changed orally.

IN WITNESS WHEREOF, the parties have executed this MASTER OCCUPANCY AGREEMENT (Master Form Proprietary Lease) on the date first above written.

Witnesses:                          POINSETTIA HOMEOWNERS ASSOCIATION, INC.

_____    By_____

                                                 Authorized Officer

_____

                                                 (Corporate Seal)

Witnesses:                          Unit Owner(s):

_____    _____

_____    _____


STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 19__
___, by _____ of Poinsettia Homeowners Association, Inc., a Florida corporation, on behalf of the corporation. He/She [  ] is personally known to me, or [  ] has produced _____
_____ as identification.

                                     _____
                                     Notary Public

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 19__
___, by _____, who: ☐ is/are

POINSETTIA HOMEOWNERS ASSOCIATION, INC.
Master Form Proprietary Lease                                                          16

EXHIBIT C-1

LEGAL DESCRIPTION

The E½ of the NE¼ of the NW¼, and the NW¼ of the NE¼, all being in Section 16, Township 44S, Range 25E, Lee County, Florida;

LESS those lands lying E of the following described line:  From the intersection of the Southerly right-of-way line of Luckett Road (66′ wide) with the Westerly right-of-way of Ortiz Avenue (SR S80B); thence from said point run West along the Southerly right-of-way line of Luckett Road for a distance of 400.0′ to the point of beginning of the line herein referred to; thence run Southerly parallel to the Westerly right-of-way of said Ortiz Avenue for a distance of 762.0′; thence continue in a Southerly direction along the same course to the N right-of-way line of Ballard Road.

LESS the right-of-way of Luckett Road as described in Deed Book 249, Page 459, of the Public Records of Lee County, Florida, and LESS the right-of-way of Nuna Avenue as shown in Plat Book 28, Page 22, of the Public Records of Lee County, Florida; and LESS the right-of-way of Ballard Road as described in Official Records Book 141, Page 224, of the Public Records of Lee County, Florida.

Tax ID Parcel #16-44-25-P2-00064.0000.

EXHIBIT C-1

EXHIBIT C-3

## SCHEDULE OF MAINTENANCE FEES AND COMMON EXPENSES

POINSETTIA HOMEOWNERS ASSOCIATION, INC.

The percentage of sharing in the Common Expenses and Common Surplus shall be equal to one divided by the total number of Units in the cooperative.

OR2642 PG4128

95 OCT 12 PH 4:47

POINSETTIA MOBILE HOME PARK

MASTER OCCUPANCY AGREEMENT
(Master Form Proprietary Lease)

TABLE OF CONTENTS

OR 642 PG4106

ARTICLE 1 - PREMISES & AGREEMENT TERM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE 2 - INSPECTION AND ACCEPTANCE OF UNITS AND COMMON AREAS  . . . . . . . . . . . . . . . . . . . . 1

ARTICLE 3 - CANCELLATION OF PRIOR AGREEMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 4 - USE OF PREMISES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 5 - USE OF COMMON AREAS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 6 - QUIET ENJOYMENT AND POSSESSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 7 - ASSIGNMENT OF ASSOCIATION'S RIGHTS AGAINST OCCUPANT  . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 8 - MAINTENANCE AND COMMON EXPENSES-HOW FIXED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        Section 8.1. Principal Payments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        Section 8.2. Maintenance Fees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        Section 8.3. Assessments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        Section 8.4. Apportionment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        Section 8.5. Special Assessments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        Section 8.6. Continuing Assessments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        Section 8.7. Common Surplus  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        Section 8.8. Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        Section 8.9. Monthly Installments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE 9 - PAYMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE 10 - CASH REQUIREMENTS DEFINED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE 11 - ALTERATIONS TO THE UNIT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE 12 - INSURANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE 13 - INDEMNITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE 14 - DAMAGE TO UNIT OR COMMON FACILITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE 15 - SERVICES BY THE ASSOCIATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE 16 - PARK RULES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE 17 - SUBLETTING AND ASSIGNMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        Section 17.1. Subletting  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        Section 17.2. Assignment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        Section 17.3. Right of First Refusal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARTICLE 41 - NON-APPLICABILITY OF FLA. STAT. CHAPTER 83 TO OCCUPANCY AGREEMENT ..... 14

ARTICLE 42 - INTEREST RATE IN THE EVENT OF DEFAULT OF UNIT OWNER ...................... 15

ARTICLE 43 - AMENDMENT OF THIS AGREEMENT ............................................... 15

ARTICLE 44 - PROVISIONS OF ARTICLES OF INCORPORATION, BY-LAWS, AND RULES ............. 15

ARTICLE 45 - CHANGES TO BE IN WRITING ..................................................... 15

OR 642 PG4108

## ARTICLE 3 - CANCELLATION OF PRIOR AGREEMENTS

If at the date of commencement of this Agreement, the Unit Owner has the right to possession of the Unit under any agreement or statutory tenancy, this Agreement shall supersede such agreement or statutory tenancy, which shall be of no further effect after the date of commencement of this Agreement.

## ARTICLE 4 - USE OF PREMISES

The Unit Owner shall not, without the written consent of the Association on such conditions as the Association may prescribe, occupy or use the Unit or permit the Unit or any part of the Unit to be occupied or used for any purpose other than as a private mobile home dwelling for the approved Unit Owner. In no event shall more than two persons permanently occupy the Unit without written consent of the Board of Directors (the "Board") of the Association. However, the Unit may be occupied from time to time by qualifying guests of the Unit Owner as long as such occupancy is not violative of applicable zoning laws, building codes or other rules and regulations of governmental authorities having jurisdiction over the Association or the Rules and Regulations of the Cooperative. Unit Owners and their guests shall not engage in any business or commercial enterprise or activity of any kind within the Park.

## ARTICLE 5 - USE OF COMMON AREAS

The Unit Owner shall have the right of joint use and enjoyment in common with other Unit Owners of the Common Areas and the Property of the Association not specifically granted to other lessees, except as it may be limited or restricted by this Agreement or by Articles of Incorporation, Bylaws, or Rules and Regulations of the Association. Unit Owner's use of Common Areas and Property shall not encroach upon the rights of other Unit Owners.

## ARTICLE 6 - QUIET ENJOYMENT AND POSSESSION

The Unit Owner, upon paying all assessments which may come due from time to time, and performing the covenants and complying with the conditions on the part of the Unit Owner to be performed as set forth in this Agreement shall, at all times during the term hereby granted, quietly have, hold and enjoy the Unit without any interference or hindrance from the Association, subject, however, to the rights of present Unit Owner or occupants of the Unit, if any, and subject to any and all mortgages of the land and improvements as provided in Article 18 below.

## ARTICLE 7 - ASSIGNMENT OF ASSOCIATION'S RIGHTS AGAINST OCCUPANT

If at the date of the commencement of this Agreement, a third party is in possession or has the right of possession of the Unit, then the Association hereby assigns to the Unit Owner all of the Association's rights against said third party from and after the date of the commencement of the term of this Agreement, and the Unit Owner by the execution of this Agreement assumes all of the Association's obligations to said third party from that date. The Association agrees to cooperate with the Unit Owner, but at the Unit Owner's expense, in the enforcement of the Unit Owner's rights against any such third party.

## ARTICLE 8 - MAINTENANCE AND COMMON EXPENSES-HOW FIXED

Section 8.1. Principal Payments. All principal payments made by Unit Owners toward the purchase of a Unit, whether by lump sum payment or installment payment according to a payment schedule established by the Board, represents capital contribution to the Association. The Unit Owner shall pay Maintenance Fees, Common Expenses and Assessments in accordance with the Schedule of Maintenance Fees and Common Expense Assessment established and set forth in Exhibit C-3 hereto attached.

Section 8.2. Maintenance Fees. Pursuant to §719.108, Florida Statutes, the owners of membership certificates and occupancy agreements (referred to in this document as "Unit Owners"), shall be liable for the payment of Maintenance Fees,

POINSETTIA HOMEOWNERS ASSOCIATION, INC.
Master Form Proprietary Lease

2

on that installment at the maximum rate allowed by law from the date when due to the date when payment is made, and such interest shall be deemed additional fees or charges under the terms of this Agreement.

## ARTICLE 10 - CASH REQUIREMENTS DEFINED

"*Cash requirements*" whenever used in this Agreement shall mean the estimated amount in cash as determined by the estimated operating budget of the Association as promulgated and adopted from year to year which the Board shall from time to time in its judgment determine to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the Property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as they may deem proper; and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than Common Expense, Assessments and Maintenance Fees), and (ii) cash on hand which the Board in its discretion may choose to apply. The Board may from time to time modify their prior determination and increase or diminish the amount previously determined as Cash requirements of the Association for the year or portion of the year. No determination of Cash requirements shall have any retroactive effect on the amount of the Maintenance Fees payable by the Unit Owner for any period prior to the date of such determination. All determinations of Cash requirements shall be conclusive as to all Unit Owners.

## ARTICLE 11 - ALTERATIONS TO THE UNIT

The Unit Owner shall not, without first obtaining the written consent of the Association, alter in any way the Unit, or add to the mobile home presently located upon the Unit or any of its fixtures and appurtenances. The Unit Owner shall not change the color of the mobile home located on the Unit, or substantially alter its outward appearance without first having obtained written approval thereof from the Board of Directors of the Association.

## ARTICLE 12 - INSURANCE

The Association shall procure and maintain at all times in full force and good standing insurance on the Common Elements, and upon the physical improvements located on the Property (not including Unit Owners' personal property or mobile homes). The Association shall also obtain casualty insurance on the Property, which shall insure against loss as a result of personal injury occurring on the Property. At any and all times there exists a mortgage on the Association property given by the Association as the mortgagor, the Unit Owner shall procure and maintain at all such times, in full force and good standing, replacement cost homeowners' insurance casualty coverage insuring Unit Owner's dwelling unit for the full insurable value. The Unit Owner shall cause such insurance policy to name the Association, or, at the Association's election, the Association's mortgagee, as an additional loss payee under the policy.

## ARTICLE 13 - INDEMNITY

The Unit Owner shall indemnify Association and hold it harmless from all liability, loss, damage and expense arising from:

(i) Unit Owner's use or possession of the Property and the conduct of Unit Owner on the Property and anything done or permitted by the Unit Owner in or about the Property, or any of them;

(ii) any failure of the Unit Owner to comply with any provision of this Agreement;

(iii) the negligence of Unit Owner and his guests, agents, contractors or employees or any of them;

(iv) any damage to the Property of Unit Owner or others or injury to any person on or about the Property from any cause;

POINSETTIA HOMEOWNERS ASSOCIATION, INC.
Master Form Proprietary Lease

4

INSTR. # 2019000296392   Page Number: 2 of 2

Assignee, by the acceptance of this Assignment, agrees to be bound by the Master Form Proprietary Lease and the Articles of Incorporation and Bylaws of POINSETTIA HOMEOWNERS ASSOCIATION, INC., a Florida not-for-profit corporation.

In the presence of:

Witness Name:  *Melinda Epps*

Christine M. Arnold   (Seal)

Witness Name:  *Jessica Rodriguez*

Robert A. Aardema   (Seal)

State of   FL
County of   Lee

The foregoing instrument was acknowledged before me this  19  day of December, 2019 by Christine M. Arnold  and  Robert  A.  Aardema,  who  [ ] are  personally  known  or  [✓] have  produced  *FL DL*   as identification.

[Notary Seal]

Notary Public

Printed Name:  *Melinda Epps*

My Commission Expires:  8/25/2020

MELINDA EPPS
Notary Public, State of Florida
Commission# GG 24901
My comm. expires Aug. 25, 2020

Exhibit E

# LUTZ, BOBO & TELFAIR, P.A.

### LAW FIRM

J. ALLEN BOBO
J. MATTHEW BOBO
CAMILE N. CAMPAGNA
JOHN R. DUNHAM, III*
DAVID D. EASTMAN
SCOTT E. GORDON
CAROL S. GRONDZIK
RICHARD P. LEE
ZACHARY J. LEE
CHARLES LOVINGS, III
H. ROGER LUTZ
BARBARA D. NEGRON
NICHOLAS K. SATO
CHARLES W. TELFAIR, IV
JONATHAN P. WHITNEY
*OF COUNSEL

ONE SARASOTA TOWER
TWO NORTH TAMIAMI TRAIL
SUITE 500
SARASOTA, FLORIDA 34236-5575

TELEPHONE: (941) 951-1800
TOLL FREE: (877) 951-1800
FAX: (941) 366-1603
E-MAIL: JWHITNEY@LUTZBOBO.COM
WWW.LBTLAW.COM
PLEASE REPLY TO: SARASOTA

TALLAHASSEE OFFICE:
2155 DELTA BOULEVARD
SUITE 210B
TALLAHASSEE, FLORIDA 32303
TOLL FREE: (877) 521-0890

BRADENTON OFFICE:
1201 6TH AVENUE W., SUITE 109
BRADENTON, FLORIDA 34205

PUNTA GORDA OFFICE:
407 E. MARION AVE., SUITE 10
PUNTA GORDA, FLORIDA 33950

December 19, 2022

## NOTICE OF TERMINATION OF LEASE

Poinsettia Homeowners Association, Inc.

*Via Certified Mail, Return Receipt Requested & Regular U.S. Mail*

Robert A. Aardema and Christine M. Arnold
268 Poinsettia Drive
Fort Myers, FL 33905

Property:   Unit 268, Poinsettia Mobile Home Park, a residential cooperative
            268 Poinsettia Drive

Dear Mr. Aardema and Mrs. Arnold:

As previously advised, this law firm represents Poinsettia Homeowners Association, Inc. (the "Association"). The Association is the owner and operator of Poinsettia Mobile Home Park, a residential cooperative, the resident-owned community in which you are a shareholder. Ownership of Unit 268 of Poinsettia Mobile Home Park is governed by the terms of the Master Form Proprietary Lease (the "Lease").

The Lease authorizes the Association to terminate your lease to the Property as follows:

If at any time the Association shall determine, upon the affirmative vote of seventy-five percent (75%) of its then Board, at a meeting duly called for that purpose, that, because of objectionable conduct on the part of the Unit Owner or of a person dwelling or visiting in the Unit, repeated after written notice from Association, the tenancy of the Unit Owner is undesirable; (it being understood, without limiting the generality of the foregoing, that to repeatedly violate or disregard the Rules and Regulations attached to the Bylaws or established in accordance with the provisions of this Agreement or the

Filing # 164782546 E-Filed 01/16/2023 11:03:23 AM

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY, FLORIDA

Poinsettia Homeowners Association, Inc., a
Florida not-for-profit corporation,

      Plaintiff,

vs.

                                    Case No. 2023-CA- 000304

Christine M. Arnold, Robert A. Aardema,

      Defendants.

_____/

## DESIGNATION OF E-MAIL SERVICE ADDRESS

The undersigned counsel hereby appears on behalf of Plaintiff, Poinsettia Homeowners Association, Inc., a Florida not-for-profit corporation, and hereby designates its Primary and Secondary E-mail service addresses pursuant to Florida Rule of Civil Procedure 1.080 (as amended effective September 1, 2012) and Fla. R. Jud. Admin. 2.516 (as amended effective September 1, 2012) and requests that copies of all motions, orders, process, pleadings, and other documents filed or served in this matter be served on Plaintiff at the Primary and Secondary E-mail addresses listed below, with such service complying with Rule 2.516(b)(1)(E):

    <u>Primary E-mail Address:</u>     jwhitney@lutzbobo.com

    <u>Secondary E-mail Address:</u>  arice@lutzbobo.com

Where service of hard copies is to be made in addition to e-mail service, Plaintiff requests that copies be served upon the undersigned counsel at the physical address listed below.

    DATED January 16, 2023.

                                    LUTZ, BOBO & TELFAIR, P.A.
                                    One Sarasota Tower
                                    Two North Tamiami Trail, Fifth Floor
                                    Sarasota, Florida 34236

Filing # 164782546 E-Filed 01/16/2023 11:03:23 AM

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY, FLORIDA

Poinsettia Homeowners Association, Inc., a
Florida not-for-profit corporation,

     Plaintiff,

vs.

                                     CASE NO. 2023-CA- 000304

Christine M. Arnold, Robert A. Aardema,

     Defendants.

_____/

## NOTICE OF LIS PENDENS

TO DEFENDANT(S):

**Christine M. Arnold, Robert A. Aardema,**
AND ALL OTHERS WHOM IT MAY CONCERN:

     YOU ARE NOTIFIED of the institution of this action by Plaintiff, Poinsettia Homeowners Association, Inc. against you seeking to quiet title to a cooperative parcel and eject you from the following property in Lee County, Florida:

     Unit 268, Poinsettia Mobile Home Park, a cooperative, according to Exhibit "C-2" (Plot Plan) of the Master Form Proprietary Lease recorded in Official Records Book 2642, Page 4105 through 4128, of the Public Records of Lee County, Florida

and on which lies appurtenant the following single-wide mobile home:

     1982 Mobile Home VIN: 10L14946, Title No. 0021502101

     DATED January 16, 2023.

                    LUTZ, BOBO & TELFAIR, P.A.
                    One Sarasota Tower
                    Two North Tamiami Trail, Fifth Floor
                    Sarasota, Florida 34236
                    (941) 951-1800 Telephone
                    (941) 366-1603 Facsimile
                    jwhitney@lutzbobo.com

     By: **/s/ Jonathan P. Whitney**
                    Jonathan P. Whitney
                    Florida Bar No. 0014874
                    Attorneys for Plaintiff Poinsettia

Page 1 of 1

## JURY DEMAND

Plaintiff, Christine Arnold, hereby demands a jury trial in this matter pursuant to MCR 2.508(B).

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

By: _____
Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiff